CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 12 2010

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROY STEVE DAVIS, | ) |
| | ) |
| Plaintiff, | ) Case No. 7:10CV00005 |
| | ) |
| v. | ) |
| | ) MEMORANDUM OPINION |
| | ) |
| UNITED STATES OF AMERICA, | ) By: Glen E. Conrad |
| | ) Chief United States District Judge |
| Defendant. | ) |

Plaintiff, a federal inmate proceeding pro se, asserts that the United States is liable to him under the Federal Tort Claims Act (FTCA) for injuries he suffered when other inmates assaulted him at the United States Penitentiary in Jonesville, Virginia (USP Lee) in October 2007. The United States' motion to dismiss, or in the alternative for summary judgment, is ripe for decision. Upon review of the record, the court finds that the motion to dismiss must be granted for want of subject matter jurisdiction.

## I. Background

Roy Steve Davis filed an administrative tort claim with the Federal Bureau of Prisons (BOP) on December 14, 2007, stating:

> On October 19, 2007, at approx., 6:30 a.m., several inmates from other housing units enter[ed Davis'] housing unit F1 using the micro-wave area to boil hot liquid substance. They proceeded to the bottom floor tv room where the claimant was watching the news entering the tv room[, then] throwing hot liquid substance into [Davis'] face missing[;] however, hot liquid substances splashed alongside his right neck area and right shoulder area causing third-degre[e] burns on his upper body area. [Davis] fought his way out of the tv room and recalled being knocked down dazed between the door and open area outside the tv room. While [Davis'] attackers continued to punch[ ], kick[ ], and stomp[ ] him, first respond[ing] staff members stood around while [Davis] was assaulted and could have stopped the assault sooner without undue risks to their own safety.

(Docket Entry (DE) 44, Exh. 1, Attach. A.) On the claim form, Davis described his injuries as follows: "third-degree burns alongside right neck area and right shoulder area with swollen and bleeding nose, head injuries resulting in memory loss, and bruises from kicking and stomping all over his body." (Id.) Under the heading "Witnesses," Davis listed "[s]everal unknown staff officials" at USP Lee and "[a]udio video cameras ([r]ight)." (Id.) He sought $50,000 for his injuries.

> The BOP denied Davis' claim by letter dated February 20, 2008, stating:
>
> Your claim has been considered for administrative settlement under the [FTCA]. You claim government liability in the amount of $50,000.00 for personal injury that occurred on October 19, 2007. Specifically, you contend you were assaulted by several other inmates while staff stood by watching.
>
> Investigation into your claim reveals that on October 19, 2007, the unit officer immediately called for assistance when he observed you being assaulted. Staff immediately responded and physically removed the assaultive inmates, preventing any further serious injury to you.
>
> As there is no evidence that any act or omission of a government employee was a factor in your injury, your claim is denied. This is a final denial of your claim. If you are not satisfied with this determination, you have six months from the date of this letter to bring suit in an appropriate United States District Court, should you wish to do so.

(DE 44, Exh. 1, Attach. B.)

Davis filed this civil action in the United States District Court for the District of Columbia in March 2008, raising claims construed by the Court as arising under the FTCA and Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). By opinion and order entered November 16, 2009, the Honorable Colleen Kollar-Kotelly, United States District Judge, granted defendants' motion in part and denied it in part. Davis v. Mukasey, 669 F. Supp.2d 45 (D. D.C. Nov. 16, 2009). Judge Kollar-Kotelly liberally construed Davis'

amended complaint and other submissions as raising five claims: (1) an Eighth Amendment claim under Bivens "against USP Lee Warden O'Brien and Officer Sizemore, the officer on duty as floor officer for Davis' unit, for injuries [Davis] sustained while unnamed prison staff allegedly watched but did not intervene promptly when Davis was assaulted by other inmates on October 19, 2007, at USP Lee"; (2) "an FTCA claim for negligence arising from the assault and injuries Davis incurred on October 19, 2007, in addition to the Bivens Eighth Amendment claim based on the assault"; (3) an Eighth Amendment claim "against O'Brien and Lappin for allegedly permitting general overcrowding at USP Lee, which culminated in the assault"; (4) a retaliation claim, alleging that employees at FCI Gilmer, a medium security prison, orchestrated Davis' transfer to USP Lee, a high security prison, "in retaliation for filing administrative grievances"; and (5) an Eighth Amendment claim against the Attorney General of the United States for failure to prosecute unidentified individuals, which purportedly created dangerous prison conditions. Id. at 48-49.

Judge Kollar-Kotelly dismissed Claims (1), (3), (4), and (5) on the ground that Davis had not exhausted administrative remedies as to these claims before filing his lawsuit, as required under 42 U.S.C. § 1997e(a). Id. at 49-50. She also ordered that the United States be substituted as the only defendant to the FTCA claim "arising from the events at USP Lee" and that the action be transferred to this court as the appropriate venue for litigation of the FTCA claim. Id. at 49, 51. See 28 U.S.C. § 1402(b) (providing that venue for FTCA cases is proper only in "the judicial district where the plaintiff resides or wherein the act or omission complained of

3

occurred"); § 1406(a) (allowing transfer based on improper venue). The transfer was effected on January 4, 2010.[1]

The United States Magistrate Judge in this court entered an order on January 6, 2010, directing the United States to respond to Davis' FTCA claim within sixty days.[2] The magistrate judge also addressed several administrative matters, among other things: putting into effect Judge Kollar-Kotelly's order by directing the clerk to substitute the United States as the defendant to the remaining claim; terminating all other defendants as parties, because all claims against them were dismissed by the November 16, 2009 order; and changing the style of the case to Davis v. United States. The United States then filed a motion to dismiss, or in the alternative, a motion for summary judgment.

---

[1] Davis has filed motions for reconsideration (DE 46, 48), seeking alteration of Judge Kollar-Kotelly's rulings prior to transfer of this case. Under the "law of the case" doctrine, this court denies Davis' motions. See Arizona v. California, 460 U.S. 605, 618 (1983) (characterizing "law of the case" as general principle that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case").

[2] The Standing Order of Court entered May 26, 2006 referred all FTCA cases filed by prisoners to the United States Magistrate Judge for consideration of all nondispositive matters.

Davis has filed a brief and a declaration in opposition to the defendant's motion.[3] Because the court concludes that it lacks subject matter jurisdiction under the FTCA as to Davis' remaining claims, based on his failure to exhaust administrative remedies and on application of the discretionary function doctrine, the court will grant defendant's motion to dismiss on alternative grounds, pursuant to Fed. R. Civ. P. 12(b)(1).

## II. Discussion

The United States is entitled to sovereign immunity and cannot be sued without its consent. FDIC v. Meyer, 510 U.S. 471, 475 (1994). Under the FTCA, a plaintiff may recover monetary damages from the United States for injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope . . . of employment."

---

[3] While Davis responds to the motion to dismiss, he asserts that he is entitled to engage in discovery before the court could grant summary judgment. He states his belief that video surveillance footage of the altercation between Davis and the assailant inmates fighting outside the TV room must exist, and he seeks production of the video and of medical records regarding the treatment his injuries required after the assault in October 2007. He does not indicate any other specific materials he wishes to discover.

The defendant has certified that although the requested video footage likely did exist at the time of the assault, it was not preserved because officials decided not to pursue any criminal prosecution related to the incident. (See DE 44, Exh. 2.) "The video on the institution cameras runs continuously and is taped over approximately every 14 days unless efforts are taken to preserve it." (Id.) Moreover, the defendant does not dispute the nature of Davis' injuries and argues that the matter must be dismissed on jurisdictional grounds. Accordingly, Davis fails to demonstrate that any discovery is necessary to his response to summary judgment. See Fed. R. Civ. P. 56(f) (requiring party opposing motion for summary judgment to show by affidavit specified reasons it cannot present facts essential to justify its opposition); see, e.g., Summers v. Leis, 368 F.3d 881, 887 (6th Cir. 2004) (finding that under Rule 56(f), plaintiff must "state with some precision the materials he hopes to obtain with further discovery, and exactly how he expects those materials would help him in opposing summary judgment").

In any event, the court herein determines that Davis' factual allegations, taken as true, are insufficient to invoke subject matter jurisdiction and dismisses the complaint on that ground, pursuant to Rule 12(b)(1). Williams, 50 F.3d at 302 (finding that district court should have dismissed complaint under rule 12(b)(1) for want of subject matter jurisdiction because FTCA claims were barred under the discretionary function exception). Because Davis fails to allege facts sufficient to support subject matter jurisdiction, in light of the DFE, the court may dismiss the complaint without affording Davis an opportunity to engage in discovery. See Kerns v. United States, 585 F.3d 189, 193 (4th Cir. 2009).

28 U.S.C. § 1346(b). The scope of the FTCA waiver of governmental immunity must be "strictly construed . . . in favor of the sovereign." Lane v. Pena, 518 U.S. 187, 192 (1996); Robb v. United States, 80 F.3d 884, 887 (4th Cir. 1996) (finding that FTCA is to be "strictly construed, and all ambiguities [ ] resolved in favor of the sovereign.").

### A. Exhaustion of Remedies

Litigants must strictly comply with the procedural requirements of the FTCA. See 28 U.S.C. § 2675; United States v. Kubrick, 444 U.S. 111, 117-18 (1979). Before filing a lawsuit under the FTCA, a claimant must present his claim to the appropriate administrative agency within two years after the claim accrues. 28 U.S.C. §§ 2401(b), 2675(a). An FTCA claim is presented "when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death." 28 C.F.R. § 14.2(a). The United States Court of Appeals for the Fourth Circuit has interpreted § 14.2(a) to require that the tort claim presented to the agency must "(1) [be] sufficient to enable the agency to investigate and [must] (2) place[ ] a sum certain value on h[is] claim." Ahmed v. United States, 30 F.3d 514, 516-17 (4th Cir. 1994) (citing other cases). See also GAF Corp. v. United States, 818 F.2d 901, 919 (D.C. Cir. 1987) (holding that Section 2675(a) requires a claimant to file "a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and . . . a sum-certain damages claim"); Keene Corp. v. United States, 700 F.2d 836, 842 (2d Cir. 1983) ("Section 2675 is designed, in conjunction with Section 2672, to provide a procedure under which the government may investigate, evaluate and consider settlement of a claim."). The plaintiff has the burden prove that he completed all the conditions precedent to filing an

FTCA lawsuit. Kielwien v. United States, 540 F.2d 676, 679 (4th Cir. 1976). A plaintiff's failure to exhaust administrative remedies before he brings suit mandates dismissal of the claim. McNeil v. United States, 508 U.S. 106, 113 (1993).

The court liberally construes Davis' amended complaint and his response to defendant's pending motion to dismiss as alleging the following negligent acts or omissions by BOP employees related to the October 19, 2007 assault: (a) Officer Sizemore, as F-Unit manager that day, stepped away from his post for 20 or 30 minutes, which allowed three inmates from other housing units to enter and roam around F-unit without authorization; (b) because of inadequate staffing decisions and overcrowding, the unauthorized inmates freely roamed F-unit for several minutes, long enough to use a microwave in one area of the unit to heat water and to carry a container of boiling water, to the TV room to attack Davis; (c) surveillance cameras and officers were not properly positioned to maintain security in the TV room; (d) prisoner classification and housing assignments were inadequate to protect Davis from the assailant inmates, all of whom had killed other inmates and were much younger than Davis;[4] (e) Sizemore, who was the first officer to observe the assault, and other officers who initially responded to Sizemore's activated body alarm, did not give verbal orders for the inmates to stop assaulting Davis and did not intervene as soon as they safely could have done so, allowing the assault to continue for ten (10) minutes; (f) prison officials failed to bring criminal charges against the assailant inmates, one of whom carried two homemade weapons; (g) the disciplinary charges that officials brought against these inmates were not as serious as their conduct warranted; and (h) prison officials used

---

[4] Davis offers evidence that one of the assailant inmates killed Davis' son in 2001.

perjured testimony during the tort claim investigation to relieve themselves of responsibility for the October 19, 2007 assault.

Of these alleged instances of misconduct, the alleged failure of Sizemore and other officers to intervene quickly enough is the only type of employee negligence that Davis "presented" to the BOP in his administrative tort claim. His claim, as conveyed to the agency, mentioned only Davis' dissatisfaction with officers' response to the assault, once it began. It made no complaint about how the inmate assailants were able to enter or roam around F Unit without detection, how TV rooms and other parts of F Unit were monitored, or where inmates with histories of violence were confined. All of these alleged acts of negligence occurred at different times and places than the only incident Davis mentioned on his claim form: the inmate assault itself and the staff response to it.

Moreover, the nature of the BOP's tort claim investigation clearly indicates that the agency construed Davis' claim as complaining only about the time period and manner in which officers responded to the assault. (DE 44, Ex. 1.) Investigators interviewed eye witnesses to the assault and determined that Sizemore first saw the inmates attacking Davis at about 6:55 a.m. and immediately activated his body alarm,[5] that other officers responded within seconds of hearing that alarm, that they acted to stop the fight once the number of officers on the scene made it safe to do so, and that the assailant inmates were restrained, removed from F Unit, and checked into another housing area barely 15 minutes later. The report of the tort claim investigation does not include any witness information about when or how the assailants entered and moved about F

---

[5] Some of the officers interviewed by the investigator reported having received notice from the F Unit officer's body alarm at about 6:55 a.m., while others reported receiving the alarm at about 6:51 a.m.

8

Unit without officers' knowledge, about how security officers and cameras are assigned or posted in that unit, or about how inmates are classified and assigned to specific prisons or housing units.[6]

Based on the foregoing, the court concludes that it has no jurisdiction to address Davis' current allegations that BOP officials, through negligent acts or omissions, failed to prevent the assault on October 19, 2007. Davis' administrative tort claim did not give the BOP sufficient notice of a need to investigate his current complaints that negligent acts or omissions by BOP officials allowed the assailant inmates to enter and roam his housing unit on October 19, 2007 and that negligent staffing or inmate classification decisions caused him to be exposed to the danger that these violent inmates would assault him. Similarly, Davis made no reference in his tort claim to the charges brought, or not brought, against the assailants and offers no indication that he filed any administrative claim concerning officials' conduct during the tort claim investigation.[7] Because Davis thus failed to comply with the notice requirement implicit in 28 U.S.C. §§ 2401(b) and 2675(a), and in 28 C.F.R. § 14.2(a), he did not exhaust his administrative remedies as to his claims that BOP employees failed to prevent the assault, that they failed to discipline the assailant inmates appropriately, and that they committed misconduct during the tort

---

[6] In support of his response, Davis submits a copy of the "Tort Claim Investigation," which summarized the testimony of the officers interviewed. (DE 31 at pp. 36-38.) On the last page of this report, the investigating officer stated that "at approximately 6:55 a.m., [the assailant] inmates entered F Unit," heated water in a microwave, went to the TV room, and assaulted Davis. (Id. at 38.) The next paragraph stated that "[t]he assault initiated at 6:55 a.m." This discrepancy between the stated times of events, however, appears to be nothing more than a typographical error, as nothing else in the tort claim investigation report and attachments indicates that the investigation of Davis' claim included the gathering of information about how the assailants entered F Unit.

[7] While Davis could not have included in his initial tort claim the allegations regarding officers' alleged misconduct during the tort claim investigation, he could have filed a separate tort claim concerning these later incidents.

9

claim investigation. Ahmed, 30 F.3d at 517-18.[8] Accordingly, the court has no jurisdiction to address these claims under the FTCA and will grant the motion to dismiss, pursuant to Rule 12(b)(1). Id. (affirming district court's dismissal under Rule 12(b)(1) of plaintiff's FTCA claim of personal injury stemming from motor vehicle accident, because administrative claim sought only recovery for property damage).[9]

B. **Discretionary Function Exception**

The discretionary function exception (DFE) excludes from the FTCA's waiver of sovereign immunity:

> any claim based upon an act or omission of an employee of the United States, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the

---

[8] See also Drew v. United States, 217 F.3d 193 (4th Cir. 2000), opinion vacated, Sept. 8, 2000, judgment below affirmed, 231 F.3d 927 (4th Cir. Nov. 17, 2000) (en banc). In the Drew case, the district court found that an administrative claim alleging negligent administration of birth control during pregnancy did not provide the government with notice of an informed consent claim that was later raised in the plaintiff's lawsuit. A Fourth Circuit panel decision reversed, finding that the exhaustion requirement in § 2675(a) was satisfied because the informed consent claim was "reasonably related" to the medical negligence claim mentioned on the administrative claim application. The full court, however, vacated the panel decision and then affirmed the judgment below, based on an equally divided vote of the active members of the court.

[9] In so doing, the court grants the motion on grounds other than those advanced by the defendant. The motion to dismiss argues that these claims are barred under the discretionary function exception to the FTCA's waiver of sovereign immunity. See 28 U.S.C. § 2680(a). The court agrees that this exception provides alternative grounds for dismissal of Davis' allegations of negligent staffing and inmate classification decisions as well as his claims concerning decisions about prosecuting and/or disciplining the assailant inmates. See, e.g., Cohen v. United States, 151 F.3d 1338, 1342 (11th Cir. 1998) (dismissing inmate victim's FTCA claims because prison administrator's decision to place plaintiff's inmate attacker at a minimum security prison fell within the discretionary function exception); Calderon v. United States, 123 F.3d 947, 950 (7th Cir. 1997) (finding that prison administrators' decision not to separate inmate from another inmate who threatened and ultimately attacked him fell within discretionary function exception).
    The motion to dismiss, however, does not address Davis' allegation (a), regarding Officer Sizemore's failure to notice and stop the assailant inmates when they entered and roamed F Unit. Because Davis failed to exhaust administrative remedies as to this allegation, however, the court need not discuss whether or not it falls under the discretionary function exception.

> failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the United States, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). This exception is intended to protect the United States from liability where its agents and employees are engaged in decision-making that involves issues of public policy.[10] See Williams v. United States, 50 F.3d 299, 308-09 (4th Cir. 1995). Complaints that fall within the DFE must be dismissed for want of subject matter jurisdiction, as the FTCA waiver of immunity does not apply. Id. at 302.

In order for a claim to fall within the DFE, it must meet two requirements: (1) the challenged governmental action must involve a judgment or choice, and (2) the governmental decision must implicate an exercise of judgment based on considerations of public policy. See Williams, 50 F.3d at 309 (citing United States v. Gaubert, 499 U.S. 315, 322 (1991)). Under the first requirement, "if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," and "the employee has no rightful option but to adhere to the directive," the conduct does not involve an element of choice, and the DFE cannot apply. See Gaubert, 499 U.S. at 322 (internal marks omitted). When the official's conduct is not prescribed by regulation or statute, however, and involves judgment or choice, the first requirement of the DFE is met. Williams, 50 F.3d at 309. Under the second DFE requirement, "if an United States agent or employee's judgment or choice advances the purposes of a regulatory scheme that gives

---

[10] The DFE is grounded in Congress' recognition that imposing liability in situations where government employees are engaged in discretionary functions would hamper efficient governmental operations. United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814 (1984).

11

an employee such discretion," both DFE requirements are met, and the exception applies to bar plaintiff's FTCA lawsuit.[11] Id.

The BOP is statutorily required to "provide suitable living quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(2). Davis relies on § 4042(2) in arguing that BOP officials had a mandatory duty to protect him and that they negligently failed to carry out this duty. Section 4042(2), however, imposes on the BOP only a general duty to care for persons in its custody, but does not mandate any particular conduct employees must engage in or avoid as a means of carrying out that duty. Because the BOP and its employees retain discretion under § 4042 to determine how its employees will carry out the duty of general care imposed by the statute, that section does not remove Davis' case from the DFE. See, e.g., Cohen, 151 F.3d at 1342-43.

The court takes judicial notice of the regulations promulgated by the BOP regarding use of force against prisoners. Prison staff are authorized "to use force only as a last alternative after all other reasonable efforts to resolve a situation have failed" and may only use "that amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff, and others, to prevent serious property damage and to ensure institution security and good order." 28 U.S.C. § 552.20. Under 28 C.F.R. § 552.21(a),

---

[11] In Gaubert, the Court found that the day-to-day decision-making at the operational level sometimes requires judgments that are within the ambit of the discretionary function exception for suits under the FTCA. 499 U.S. at 325. "Discretionary conduct is not confined to the policy or planning level. It is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." Id. (omitting internal quotation).

12

> Staff <u>may</u> immediately use force and/or apply restraints when the behavior
> described in § 552.20, [such as the assault of one inmate by others] constitutes an
> immediate, serious threat to the inmate, staff, others, property, or to institution
> security and good order.

§ 552.21(a) (emphasis added). An affidavit by Special Investigative Agent (SIA) Richard Pitts, offered in support of defendant's motion, states:

> [BOP] staff are trained to wait for enough responding staff to arrive so that a
> situation can be safely contained, rather than immediately attempting to break up a
> fight or assault singlehandedly. Otherwise, staff members would place
> themselves at greater risk of harm, especially when more than one or two inmates
> are involved.

(DE 44, Exh. 2, at ¶ 15.)

Under these undisputed BOP policies, the officer who first observed the inmates attacking Davis on October 19, 2007 was not required to apply force immediately in order to quell the obvious threat to Davis' safety. Rather, policy authorized him to determine, in his discretion under the circumstances facing him at any given moment, when it was appropriate to apply physical force to stop the attackers. That officer chose to activate his body alarm immediately to call for other officers to assist him and then to wait for that assistance to arrive. Likewise, each staff member who responded to the body alarm had discretion under the policies to evaluate the situation and decide when the number of guards present was sufficient to safely break up the fight. Davis disputes defendant's evidence that, while waiting for a sufficient number of officers to come to the scene of the fight, responding officers gave verbal orders for the attacker inmates to stop beating Davis. This dispute is not material, however, to the DFE analysis, as these actions also involved the officers' choices, based on their professional

judgment. The court concludes that the officers' conduct in the initial response to the inmate altercation was discretionary in nature, in satisfaction of the DFE's first requirement.

The court also finds that the officers' conduct implicated an exercise of judgment based on considerations of public policy, in satisfaction of the DFE's second requirement. Decisions about when and how to intervene in an inmate fight are "part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons." Cohen, 151 F.3d at 1344 (citing Bell v. Wolfish, 441 U.S. 520, 527 (1979) ("[P]rison administrators . . . should be accorded wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.")). The officers' decisions regarding when and how to stop the assault on Davis clearly furthered the public policy considerations behind the BOP regulations regarding use of force, by avoiding unnecessary risk to the safety of the officers, and yet carrying out their responsibilities to prevent further harm to Davis as soon as safely possible and to restore order in F Unit. See Fargas v. United States, Civil No. 06-3267 (JRT/JSM), 2008 WL 698487 (D. Minn. Mar. 13, 2008) ("[T]he on-the-spot decision of whether to immediately break up a fight or wait for assistance, addressed the balancing of the rights of plaintiff with the overall security of the facility, thereby involving the application of public policy principles contemplated by the discretionary-function exception.").

For the stated reasons, the court concludes that Davis' remaining claim—alleging that officers failed to respond appropriately when they learned he was being assaulted—is barred under the discretionary function exception of the FTCA. Because it thus falls into that category

of claims for which the United States has not waived its sovereign immunity, the court has no subject matter jurisdiction and will grant the motion to dismiss pursuant to Rule 12(b)(1).

### III. Conclusion

For the stated reasons, the court concludes that, even taking Davis' factual allegations as true, his claims fall within exceptions to the waiver of sovereign immunity under the FTCA–because he failed to exhaust administrative remedies and/or because the discretionary function exception to the waiver applies. Accordingly, the court will grant defendant's motion to dismiss on the ground that subject matter jurisdiction is lacking. An appropriate order will issue this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and counsel of record for the defendant.

ENTER: This 12th day of July, 2010.

_____
Chief United States District Judge